[Civ. No. 3966. Fourth Dist. June 26, 1950.]

WILLIAM WALTER HALL, Respondent, v. BESSIE M. HALL, Appellant.

F. W. Powell for Appellant.

Roy Daily for Respondent.

GRIFFIN, J.—Plaintiff brought this action against defendant in the form of an ordinary quiet title action, alleging generally that defendant claimed an adverse interest in certain property in El Cajon; that in November, 1944, plaintiff instructed defendant to negotiate for the purchase of said property by a contract of purchase for and on his behalf, and that plaintiff would furnish the money therefor but title was to be taken in defendant's name with the understanding that after all payments were made and plaintiff was entitled to hold title thereto, defendant would transfer said property to him. Under the prayer of the complaint plaintiff asked that it be declared that defendant held such title as trustee for plaintiff, that title be quieted in him and that defendant be ordered to convey it to him.

Defendant Bessie M. Hall met plaintiff William Walter Hall in 1944. She was at that time employed as a waitress. She was then married to one Sipes who was overseas. She was living with one Harrington, by whom she became pregnant. Harrington married another woman and left defendant stranded. Plaintiff, who was on parole from Folsom prison, pitied her because she feared her husband would find out about her condition and he took her to his parents' home for care. After remaining there for some time they moved to various auto courts and lived together as husband and wife without benefit of a marriage ceremony. Plaintiff decided to purchase a little home for $900, where they might live unharmed from verbal attacks of gossip. Plaintiff, who, under the rules pertaining to his parole, was precluded from entering into any civil contract, agreed with defendant that she might purchase the property in the name of Bessie M. Hall, and when he was eligible to hold title to the property she was to transfer such title to him. As between plaintiff and defendant there was some "talk" about defendant obtaining a divorce from her husband and also about them getting married, and that after plaintiff "got out" of prison they would be married and that he then wanted the place in his name.

The evidence is conflicting as to who made the bulk of payments on the contract of purchase. However, the court found that plaintiff made all such payments and the evidence fully supports the finding. Plaintiff encountered financial straits in meeting all of his obligations. He purchased an oil station, on contract, and during the rationing days he burglarized different establishments, stole gasoline ration stamps, and sold them. Apparently some of this money was used in finishing the house payments and paying other outstanding obligations. His parole was revoked and he was recommitted. During the interim defendant visited plaintiff at Folsom and also wrote to him. The letters bear evidence that both plaintiff and his mother were endeavoring to have defendant relinquish title to the property but defendant refused unless she was paid some money. Later, her husband, Sipes, died. She left for the East and married one James Hall on October 31, 1945. She then threatened to sell the property. Plaintiff secured written consent of the Adult Authority, apparently giving him the right to institute this action. He later was released from prison, appeared at the trial, and testified to the facts related. Defendant appeared by deposition only.

The court found in all respects in favor of plaintiff, and quieted his title against defendant.

Defendant appealed and claims first that in a case of this kind where the parties are living in a meretricious relationship, there is a presumption of the gift on the part of the man to the woman, and secondly, that where the man (plaintiff) in such a situation, after having placed the title to the real property in the name of the woman (defendant), being *in pari delicto* with her, sues to recover the property from her in an action to quiet title and to establish a trust, both of which are equitable proceedings, that the courts of this state, as courts of equity, will not grant relief to such a plaintiff, particularly when it was part of his own scheme to circumvent the criminal parole laws, citing *Bertelsen* v. *Bertelsen,* 7 Cal. App. 258 [94 P. 80] ; *Porter* v. *Douglass,* 7 Cal.App. 429 [94 P. 591] ; *Elliott* v. *Merchants Bank, etc. Co.,* 21 Cal.App. 536 [132 P. 280] ; *Chateau* v. *Singla,* 114 Cal. 91 [45 P. 1015, 55 Am.St.Rep. 63, 33 L.R.A. 750] ; and 15 Cal.L.Rev. 160; *Kimbro* v. *Kimbro,* 199 Cal. 344 [249 P. 180].

As to the first complaint, the court's finding that the property was not a gift from defendant, notwithstanding the claimed presumption of gift, is sufficiently supported by the

evidence and such finding is conclusive on appeal. (*Chichester* v. *Seymour*, 28 Cal.App.2d 696 [83 P.2d 301].)

The second point presents a closer question. In the Bertelsen case the trial court found that there was a gift. However, the decision gives an expression to the thought that, under the evidence pertaining to the parties living in meretricious relationship, the payments upon the property were made *in consideration* of a continued course of prostitution, and the court should have left the parties where it found them in respect to the judicial relief sought. In the instant case it does not affirmatively appear that the *consideration* flowing to plaintiff was a continued course of prostitution. The understanding was that plaintiff and defendant *contemplated matrimony* at some future time and the defendant was to hold the title to the property in her name until the plaintiff was relieved of the restrictions imposed upon him by virtue of the conditions under which he was paroled.

*Norman* v. *Burks*, 93 Cal.App.2d 687 [209 P.2d 815], is somewhat similar in principle to the question here involved. Plaintiff there was separated from his wife. He met defendant, "talked" of marriage, and placed considerable property in her name. Later, defendant called plaintiff and told him "all was off" between them and that she was going to marry another man, which she did. There, as here, "thus ended this idyl of Acadie." It was there held that the payment of the purchase price of the property gave rise to the presumption that the one paying for it had an equitable interest therein; that the breach of defendant's agreement to marry plaintiff, even though at that time plaintiff was married to another, was a promise fraudulently made and therefore defendant held the property for plaintiff's use and benefit. To the same effect is *Janes* v. *Goyne*, 80 Cal.App.2d 686 [182 P.2d 231], in which case plaintiff and defendant lived in illicit relationship under promise of marriage and plaintiff acquired property with defendant as joint tenants with the understanding that they would subsequently marry. When defendant later refused, plaintiff brought a quiet title action and the court found it was a proper case for equitable relief in favor of the plaintiff. The evidence here presented brings plaintiff within the rule established in those cases, where the defendant holds title under an agreement to marry and fraudulently breaches the agreement and marries another.

The only remaining question is whether or not the placing of the property in defendant's name for plaintiff's

benefit, while plaintiff was subject to rules that would prevent him from entering into any civil contract, would preclude a recovery herein.

Section 2600 of the Penal Code provides that a sentence of imprisonment in a state prison suspends all the civil rights of the person so sentenced, but the Adult Authority may restore such rights as it may deem proper, with certain exceptions not here involved. See, also, section 3054, Penal Code, which provides that the scope or extent of such civil rights shall be determined by such board as, in the judgment of such board, is for the best interest of society and such paroled person. It has been held that such suspension prevails during the term of parole. (*In re Sanders,* 47 Cal.App. 368 [190 P. 647].) Section 2603 of the Penal Code provides that these sections should not be construed as rendering the persons mentioned incapable of making a will or making or acknowledging a sale or conveyance of property.

It is a general rule of law that one should not be permitted to do indirectly that which he is forbidden to do directly. (*Hunter* v. *Superior Court,* 36 Cal.App.2d 100, 109 [97 P.2d 492].) *In re Gainfort,* 14 F.Supp. 788, states that the status of convicts in regard to civil rights in California is rather uncertain and that the trend of the law is to lessen the severity and harshness of the common-law penalties in relation to convicts, their property and rights; and that this is in accord with the modern notion that imprisonment of a felon is rather a means for protecting society than a punishment imposed upon an individual. (Citing *California Highway Com.* v. *Industrial Acc. Com.,* 200 Cal. 44 [251 P. 808, 49 A.L.R. 1377].)

The exact terms of the grant of authority is not before us in the record. Counsel for plaintiff informed the court that he had "here a permission of the Adult Authority, which we have procured before we filed our suit," and offered it in evidence. The trial judge ruled that "that is a part of the defendant's case." The agreement to purchase was made while plaintiff was on parole. It may have required the limited restoration of plaintiff's civil rights before he could properly execute such an agreement. The extent of the authority is not clear. The court found that plaintiff was entitled to recover. In support of the judgment every intendment is presumed in its favor unless the contrary is shown. (*Owen* v. *Morton,* 24 Cal. 373.) Nevertheless, when the Adult Author-

ity did restore to plaintiff his civil rights, which would enable him to bring this action to enforce those particular rights, it, in effect, must have ratified his action in executing the agreement through defendant, as trustee, and it would follow that it intended to restore to him such rights as were necessary to effect a complete recovery in the action. Should it be otherwise, there would be no point in granting plaintiff the bare right to bring such an action, knowing that the agreement under which the action was brought could not be legally enforced by him in a court of equity. Since the court found, upon sufficient evidence, that defendant was merely holding title to the property in trust for plaintiff, in the absence of clearer showing of a more limited restoration of civil rights and in the absence of objection on the part of the Adult Authority, defendant, as trustee, should not be allowed to take advantage of section 2600 of the Penal Code, retain the property as her own, and dispose of it to the detriment of the plaintiff. (*Nishi* v. *Downing*, 21 Cal.App.2d 1 [67 P.2d 1057] ; 16 Am.Jur. 14, 15, §§ 8, 9 ; 41 Am.Jur. 912, § 39 ; 16 Am.Jur. 487, 488, § 87 ; *Shiba* v. *Chikuda*, 214 Cal. 786 [7 P.2d 1011] ; *Hart* v. *Kanaye Nagasawa*, 218 Cal. 685 [24 P.2d 815].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.